AO 106 (Rev. 04/10) Application for a Search Warrant

# UNITED STATES DISTRICT COURT
for the
Southern District of Ohio

In the Matter of the Search of )
*(Briefly describe the property to be searched* )
*or identify the person by name and address)* )
) Case No. 2:21-mj-388
(7) Cell phones different makes and models, DEA )
Columbus Office 500 South Front Street, Columbus, )
Ohio 43215 )

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:
See Attachment A

located in the _____Southern_____ District of _____Ohio_____ , there is now concealed *(identify the person or describe the property to be seized)*:
See Attachment B

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:
☑ evidence of a crime;
☑ contraband, fruits of crime, or other items illegally possessed;
☑ property designed for use, intended for use, or used in committing a crime;
☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| Title 21, U.S.C. § § 841 (a)(1) and 841(b)(1)(B) | Possess with the intent to distribute 50 grams or more of a mixture or substance containing methamphetamine, a schedule II controlled substance. |

The application is based on these facts:
See Attached Affidavit.

☐ Continued on the attached sheet.
☑ Delayed notice of __30__ days (give exact ending date if more than 30 days: _____ ) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

*Applicant's signature*

Phillip Miller, DEA Task Force Officer
*Printed name and title*

Sworn to before me and signed in my presence.

Date: __6-2-21__

*Judge's signature*

City and state: Columbus, Ohio

Chelsey M. Vascura, U.S. Magistrate Judge
*Printed name and title*

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO

| | |
|---|---|
| IN THE MATTER OF THE SEARCH OF (1) Black LG cellular phone (IMEI:3550541618030949), (1) Silver LG Artisto 5 cellular phone (IMEI:354855111330279), (1) Mint Green Apple I-phone, (1) Blue Motorola with cracked screen, (1) Blue Samsung cellular phone, (1) Samsung cellular phone with black body glove case (IMEI:3598110297286), (1) Black Samsung cellular phone (IMEI:351767112333579), CURRENTLY LOCATED AT DEA Columbus District Office – Temporary Storage Locker located at 500 South Front Street, Columbus, Ohio 43215 | Case No. |

## AFFIDAVIT IN SUPPORT OF AN APPLICATION UNDER RULE 41 FOR A WARRANT TO SEARCH AND SEIZE

I, Phillip Miller, being first duly sworn, hereby depose and state as follows:

### INTRODUCTION AND AGENT BACKGROUND

1. I make this affidavit in support of an application under Rule 41 of the Federal Rules of Criminal Procedure for a search warrant authorizing the examination of property—seven electronic devices—which are currently in law enforcement possession, and the extraction from that property of electronically stored information described in Attachment B. The search is related to a violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(B), possession with intent to distribute 50 grams or more of a mixture or substance containing a detectible amount of methamphetamine, a schedule II controlled substance.

2. I am a Police Officer and Detective with the Columbus Division of Police, assigned full-time as a Task Force Officer (TFO) with the Drug Enforcement Administration (DEA), Columbus District Office. As such, I am an "investigative or law enforcement officer" of the

United States within the meaning of Title 18 U.S.C.§ 2510(7), that is, an officer of the United States empowered by law to conduct criminal investigations and make arrests for offenses enumerated in Title 18 U.S.C.§ 2516. Your affiant has been employed by the Columbus Division of Police as a "Law Enforcement Officer," as defined in the Ohio Revised Code Section 2901.01, since July, 2002. Your affiant is empowered to investigate, to make arrests with or without warrants and to execute search warrants under the authority of Title 21 U.S.C. § 878 and the Ohio Revised Code.

(a) Prior to being assigned to the DEA Task Force, your affiant was assigned to the Columbus Division of Police, Patrol Unit from July 2003 to October 2018 then to the Detective Bureau between October 2018 and January 2019.

(b) I graduated from the Columbus Division of Police Academy located in Columbus, Ohio in January 2003. I received approximately 6 months of specialized police training including but not limited to: search and seizure, investigative techniques, testifying in court, evidence collection, interview and interrogation, and controlled substance identification.

(c) During the course of my law enforcement career, I have had experience in debriefing defendants and interviewing participating witnesses, cooperating individuals and other persons who have personal knowledge and experience regarding narcotics related investigations.

(d) As a DEA TFO and police officer, I have participated in the execution of search warrants at the residences and businesses of narcotics traffickers, safe houses, crack houses, and have participated in numerous arrests for drug related offenses. I have drafted numerous search warrants.

(e) As a DEA TFO, I have participated in investigations targeting individuals and organizations trafficking heroin, cocaine, cocaine base ("crack"), marijuana, methamphetamine and other controlled substances as defined in 21 U.S.C. § 801.

2

(f) Since becoming a Task Force Officer with the DEA, I have completed the following training: Task Force Officer School (September 2019) and the Ohio State Highway Patrol Interdiction class (October 2019).

3. The information set forth in this affidavit comes from your affiant's personal involvement in this investigation, as well as information provided to your affiant by other law enforcement officers. This affidavit is intended to show only that there is sufficient probable cause for the requested search warrant and does not set forth all of my knowledge about this investigation.

### IDENTIFICATION OF THE DEVICE TO BE EXAMINED

The property to be searched is a (1) **Black LG cellular phone (IMEI:3550541618030949), (1) Silver LG Artisto 5 cellular phone (IMEI:354855111330279), (1) Mint green Apple I-phone, (1) Blue Motorola with a cracked screen, (1) Blue Samsung cellular phone, (1) Samsung cellular phone (IMEI:35998110297286), (1) Black Samsung cellular phone (IMEI:351767112333579),** hereinafter the "Devices." The Devices are currently located at the **Drug Enforcement Administration (DEA) Columbus District Office temporary storage locker, 500 South Front Street, Columbus, Ohio 43215.** The applied-for warrant would authorize the forensic examination of the Devices for the purpose of identifying electronically stored data particularly described in Attachment B.

### PROBABLE CAUSE

4. Because this affidavit is being submitted for the limited purpose of seeking authorization for the execution of a search warrant, your Affiant has not set forth each and every fact learned during the course of this investigation. Your Affiant has set forth only those facts that your Affiant believes are necessary to establish the foundation for an order authorizing the requested search warrants.

5. On April 8, 2021, plans were formulated at the DEA's Columbus District Office for an undercover DEA Special Agent (SA) to meet with Dalton FANNIN later that day, for the purpose of purchasing four (4) ounces of methamphetamine. Surveillance conducted after the transaction with FANNIN on this day followed up by a traffic stop led to the arrest of Ryan

3

MOORE. MOORE stated that earlier in the day, just prior to his arrest, he had obtained some Percocet pills from a tall Hispanic Male in the area of Thomas Avenue and Catherine Street. Investigators knew that the area that MOORE was describing was the house located at 1655 Thomas Avenue. MOORE described the Hispanic male as 6'0" tall with tattoos on his arms. According to MOORE, the Hispanic male worked for a Mexican drug trafficker known as "Cali". According to MOORE, "Cali" was also tall and had tattoos on his arms. MOORE stated that he believes "Cali" is in charge of a Mexican Drug Trafficking Organization (DTO) operating out of Columbus, Ohio. According to MOORE, he has, in the past, purchased pounds of Methamphetamine from this DTO.

6. On May 18, 2021, at approximately 11:15 a.m., DEA special agents and task force officers established surveillance of the house located at 1655 Thomas Avenue. At approximately 1:20 p.m., investigators observed a thin young white male covered in tattoos walking north toward the TARGET LOCATION from the direction of West Mound Street. This white male was subsequently identified. However, he will be listed here as a source of information (SOI). A DEA TFO subsequently observed the SOI speaking with one of the young Hispanic males hanging out at 1655 Thomas Avenue before the Hispanic male escorted him into the house.

7. At approximately 1:40 p.m., a DEA TFO observed the second Hispanic male believed to reside inside 1655 Thomas Avenue arrive and walk into the house located at 1655 Thomas Avenue. This second Hispanic male was subsequently identified as Noe Martin BARRON. BARRON is tall, approximately 6'2" and is covered in tattoos. BARRON was much taller than the other Hispanic men hanging out at 1655 Thomas Avenue.

8. At approximately 1:47 p.m., a DEA TFO observed the SOI depart 1655 Thomas Avenue and subsequently walk west on Thomas Avenue.

9. At approximately 1:55 p.m., a DEA TFO and Special Agent conducted a consensual non-seizure contact of the SOI in the area of Edwin Street and Safford Avenue as he/she was walking south toward Mound Street.

4

10. A DEA TFO asked for and received consent from the SOI to search his/her person and belongings for weapons and controlled substances. A subsequent search of the SOI revealed that he/she was carrying inside his/her wallet two bindles and a small baggie containing a white crystalline substance believed to be methamphetamine and a small bindle containing an off-white powder believed to be fentanyl. The SOI admitted to obtaining the suspected methamphetamine from a tall Hispanic male known as "Cali" who resides on Thomas Avenue.

11. A presumptive field test of a sample taken from the suspected methamphetamine found in the SOI's possession. The sample subsequently tested positive for the presence of methamphetamine.

12. On May 18, 2021, United States Magistrate Judge Chelsey M. Vascura authorized a federal search warrant to search the house located at 1655 Thomas Avenue.

13. At the time this warrant was executed, Noe Martin BARRON was inside the house located at 1655 Thomas Avenue. BARRON closely fit the physical descriptions of the trafficker known as "Cali" given by MOORE and the SOI.

14. Investigators subsequently discovered a large amount of U.S. currency in the north bedroom, along with small amounts of suspected methamphetamine and fentanyl, packaged for street level distribution. The currency seized was approximately $86,910.00. During processing, BARRON advised investigators that he resided at 1655 Thomas Avenue, and slept in the north bedroom whose windows overlooked Thomas Avenue. BARRON claimed that the currency discovered in his room did not belong to him. However, BARRON did not wish to speak with investigators concerning the suspected drugs found in his bedroom. Investigators recovered seven different types of cell phones all located in the same green shoe box as well as a plastic baggie containing approximately 60.4 gross grams of small blue pills, suspected to be fentanyl in the same green shoe box next to a mattress lying on the ground in the north bedroom.

15. Investigators also discovered approximately 460.6 gross grams of a white crystalline substance believed to be methamphetamine in the kitchen. A presumptive field test of a sample of the substance subsequently tested positive for the presence of methamphetamine.

16. I am aware, through training and experience, that it is common for narcotics traffickers to utilize multiple cellular phones as well as multiple cell phone numbers to arrange and complete narcotics transactions. I am also aware, through training and experience, that it is common for narcotics traffickers to utilize multiple cellular phones as well as multiple cell phone numbers to contact their customer base as well as sources of supplies to obtain the narcotics in which they traffic.

17. The Devices are currently in the lawful possession of the DEA. They came into the possession of the DEA pursuant to the arrest of BARRON and the ensuing search warrant executed at his residence located at 1655 Thomas Avenue.

18. The Devices are currently in storage at the **DEA Columbus District Office, Temporary Storage Locker located at 500 South Front Street in Columbus, Ohio 43215.** In my training and experience, I know that the Devices has been stored in a manner in which its contents are, to the extent material to this investigation, in substantially the same state as they were when the Devices first came into the possession of the DEA.

## TECHNICAL TERMS

19. Based on my training and experience, I use the following technical terms to convey the following meanings:

   a. Wireless telephone: A wireless telephone (or mobile telephone, or cellular telephone) is a handheld wireless device used for voice and data communication through radio signals. These telephones send signals through networks of transmitter/receivers, enabling communication with other wireless telephones or traditional "land line" telephones. A wireless telephone usually contains a "call log," which records the telephone number, date, and time of calls made to and from

the phone. In addition to enabling voice communications, wireless telephones offer a broad range of capabilities. These capabilities include: storing names and phone numbers in electronic "address books;" sending, receiving, and storing text messages and e-mail; taking, sending, receiving, and storing still photographs and moving video; storing and playing back audio files; storing dates, appointments, and other information on personal calendars; and accessing and downloading information from the Internet. Wireless telephones may also include global positioning system ("GPS") technology for determining the location of the device.

b. Digital camera: A digital camera is a camera that records pictures as digital picture files, rather than by using photographic film. Digital cameras use a variety of fixed and removable storage media to store their recorded images. Images can usually be retrieved by connecting the camera to a computer or by connecting the removable storage medium to a separate reader. Removable storage media include various types of flash memory cards or miniature hard drives. Most digital cameras also include a screen for viewing the stored images. This storage media can contain any digital data, including data unrelated to photographs or videos.

c. GPS: A GPS navigation device uses the Global Positioning System to display its current location. It often contains records the locations where it has been. Some GPS navigation devices can give a user driving or walking directions to another location. These devices can contain records of the addresses or locations involved in such navigation. The Global Positioning System (generally abbreviated "GPS") consists of 24 NAVSTAR satellites orbiting the Earth. Each satellite contains an extremely accurate clock. Each satellite repeatedly transmits by radio a mathematical representation of the current time, combined with a special sequence of numbers. These signals are sent by radio, using specifications that are publicly available. A GPS antenna on Earth can receive those signals. When a GPS antenna receives signals from at least four satellites, a computer connected to that antenna can mathematically calculate the antenna's latitude, longitude, and sometimes altitude with a high level of precision.

d. Internet: The Internet is a global network of computers and other electronic devices that communicate with each other. Due to the structure of the Internet, connections between

7

devices on the Internet often cross state and international borders, even when the devices communicating with each other are in the same state.

20. Based on my training, experience, and research, I know that the Devices seized have capabilities that allow it to serve as, among other things, a wireless telephone for voice and text messages, digital camera, portable media player, GPS navigation device and portal to the internet. In my training and experience, examining data stored on devices of these types can uncover, among other things, evidence that reveals or suggests who possessed or used the device.

## ELECTRONIC STORAGE AND FORENSIC ANALYSIS

21. Based on my knowledge, training, and experience, I know that electronic devices can store information for long periods of time. Similarly, things that have been viewed via the Internet are typically stored for some period of time on the device. This information can sometimes be recovered with forensics tools.

22. *Forensic evidence.* As further described in Attachment B, this application seeks permission to locate not only electronically stored information that might serve as direct evidence of the crimes described on the warrant, but also forensic evidence that establishes how the Devices were used, the purpose of their use, who used them, and when. There is probable cause to believe that this forensic electronic evidence might be on the Devices because:

    a. Data on the storage medium can provide evidence of a file that was once on the storage medium but has since been deleted or edited, or of a deleted portion of a file (such as a paragraph that has been deleted from a word processing file). Forensic evidence on a device can also indicate who has used or controlled the device. This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence.

8

b. Forensic evidence on a device can also indicate who has used or controlled the device. This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence.

c. A person with appropriate familiarity with how an electronic device works may, after examining this forensic evidence in its proper context, be able to draw conclusions about how electronic devices were used, the purpose of their use, who used them, and when.

d. The process of identifying the exact electronically stored information on a storage medium that is necessary to draw an accurate conclusion is a dynamic process. Electronic evidence is not always data that can be merely reviewed by a review team and passed along to investigators. Whether data stored on a computer is evidence may depend on other information stored on the computer and the application of knowledge about how a computer behaves. Therefore, contextual information necessary to understand other evidence also falls within the scope of the warrant.

e. Further, in finding evidence of how a device was used, the purpose of its use, who used it, and when, sometimes it is necessary to establish that a particular thing is not present on a storage medium.

23. *Nature of examination.* Based on the foregoing, and consistent with Rule 41(e)(2)(B), the warrant I am applying for would permit the examination of the Devices consistent with the warrant. The examination may require authorities to employ techniques, including but not limited to computer-assisted scans of the entire medium, that might expose many parts of the Devices to human inspection in order to determine whether it is evidence described by the warrant.

24. *Manner of execution.* Because this warrant seeks only permission to examine Devices already in law enforcement's possession, the execution of this warrant does not involve the physical intrusion onto a premises. Consequently, I submit there is reasonable cause for the Court to authorize execution of the warrant at any time in the day or night.

## CONCLUSION

25. I submit that this affidavit supports probable cause for a search warrant authorizing the examination of the Devices described in Attachment A to seek the items described in Attachment B.

## REQUEST FOR SEALING

26. It is respectfully requested that this Court issue an order sealing, until further order of the Court, all papers submitted in support of this application, including the application and search warrant. I believe that sealing this document is necessary because the warrant is relevant to an ongoing investigation into the criminal organization as not all of the targets of this investigation will be searched at this time. Based upon my training and experience, I have learned that, online criminals actively search for criminal affidavits and search warrants via the internet, and disseminate them to other online criminals as they deem appropriate, i.e., post them publicly online through the carding forums. Premature disclosure of the contents of this affidavit and related documents may have a significant and negative impact on the continuing investigation and may severely jeopardize its effectiveness.

Respectfully submitted,

_____, TFO
Phillip L. Miller
Task Force Officer
Drug Enforcement Administration

Subscribed and sworn to before me

10

on June 2, 2021:

_____
CHELSEY M. VASCURA
UNITED STATES MAGISTRATE JUDGE

## ATTACHMENT A

The property to be searched (the "Devices"): (1) Black LG cellular phone (IMEI:3550541618030949), (1) Silver LG Artisto 5 cellular phone (IMEI:354855111330279, (1) Mint green Apple I-phone, (1) Blue Motorola with a cracked screen, (1) Blue Samsung cellular phone, (1) Samsung cellular phone (IMEI:35998110297286), (1) Black Samsung cellular phone (IMEI:351767112333579), The Devices are currently located at the Drug Enforcement Administration (DEA) Columbus District Office temporary storage locker, 500 South Front Street, Columbus, Ohio 43215.

This warrant authorizes the forensic examination of the Devices for the purpose of identifying the electronically stored information described in Attachment B.

## ATTACHMENT B

1. All records on the Devices described in Attachment A that relate to violations of Title 21, United States Code, Sections 841(a)(l); and involve Noe M. BARRON since the origination of data on the devices, including:

   a. lists of customers and related identifying information;

   b. types, amounts, and prices of drugs trafficked as well as dates, places, and amounts of specific transactions;

   c. any information related to sources of drugs (including names, addresses, phone numbers, or any other identifying information);

   d. any information recording Noe M. BARRON schedule or travel from the origination of data on the Devices to the present;

   e. all bank records, checks, credit card bills, account information, and other financial records.

2. Evidence of user attribution showing who used or owned the Devices at the time the things described in this warrant were created, edited, or deleted, such as logs, phonebooks, saved usernames and passwords, documents, and browsing history;

As used above, the terms "records" and "information" include all of the foregoing items of evidence in whatever form and by whatever means they may have been created or stored, including any form of computer or electronic storage (such as flash memory or other media that can store data) and any photographic form.